FILED

2006 SEP -6 PM 1:55

SOUTHERN DISTRICT OF CALIFORNIA

BY _____ *do* _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

TRACEY PABON,
CDC #C-84831,

                        Plaintiff,

    vs.

STUART RYAN, DR. ARNOLD
ANGELICI, D.D.S., DR. DONALD GARSH,
D.D.S., DR. RICHARD TORCHIA, D.D.S.,
and DOES 1though 100, inclusive,

                     Defendants.

CASE NO. 05CV0283-LAB (CAB)

**ORDER ADOPTING REPORTS
AND RECOMMENDATIONS, AND
GRANTING DEFENDANT
RYAN'S AND DEFENDANT
GARSH'S MOTIONS TO DISMISS**

        Plaintiff, a prisoner formerly appearing *in pro per*, filed his First Amended Complaint ("FAC"), which is the operative complaint in this case, on April 11, 2005. The first two causes of action were brought under 42 U.S.C. § 1983 for alleged violations of Plaintiff's Eighth Amendment rights. As his first cause of action, Plaintiff alleges that each Defendant was deliberately indifferent to his serious medical needs. As his second cause of action, Plaintiff alleges that each Defendant violated his right to be free from cruel and unusual punishment. The FAC names a third cause of action, a state claim for negligence. The third cause of action is not the subject of either motion to dismiss. In the FAC, Plaintiff seeks only damages.

        On September 6, 2005, Defendant Ryan filed a motion under Fed. R. Civ. P. 12(b)(6) to dismiss the first two claims against him, along with a request for judicial notice of particular facts of

1   Dr. Angelici's professional status. Plaintiff opposed the motion but not the request for judicial notice.

2   On November 17, 2005, Magistrate Judge Leo Papas issued a report and recommendation ("Ryan

3   R&R") that the motion be granted. Plaintiff filed objections to the Ryan R&R, and Defendant Ryan

4   filed a reply to these objections.

5       On November 18, 2005, Defendant Garsh also filed a motion under Rule 12(b)(6) to dismiss

6   the first two complaints against him. Plaintiff filed no opposition. On January 27, 2006, Magistrate

7   Judge Cathy Bencivengo issued a report and recommendation recommending that Defendant Garsh's

8   motion be granted ("Garsh R&R") (collectively with the Ryan R&R, the "R&Rs"). Plaintiff filed

9   objections, to which Defendant Garsh filed no reply.

10  **I. Factual Background**

11      Except where noted, the following facts are taken from the FAC, or from the portions of the

12  R&Rs that Plaintiff has not objected to and which the Court therefore adopts. Plaintiff was a prisoner

13  at the Calipatria State Prison where he was a patient of Dr. Arnold Angelici, a dentist. On May 17,

14  2004, while extracting Plaintiff's wisdom tooth, Dr. Angelici inflicted serious injuries on Plaintiff.

15  Plaintiff alleged that Dr. Angelici had deformed hands that caused him to lose his grip on the drill.

16  The drill made two holes in Plaintiff's paratonsillar area, and left exposed lacerations on Plaintiff's

17  gum area.

18      During and after the surgery, Plaintiff was in severe pain. Plaintiff alleges that was not

19  provided proper dental care by Defendants Angelici, Torchia, and Garsh, who, he says, either refused

20  to treat him or improperly treated him, made false notations in his medical file, and refused his

21  repeated requests to correct the false notations.

22      Specifically, Plaintiff says his face and throat had become swollen by the evening after the

23  surgery, and that he was prescribed medication and attended to by another doctor, Dr. Nguyen.

24  Plaintiff alleges that after Dr. Angelici refused to see him again, he was advised to contact Dr. Garsh.

25  Plaintiff alleges that Dr. Garsh was aware that Dr. Angelici's hands were deformed and that there had

26  been complaints that he was unable to provide safe treatment.

27      May 23, 2004 is the first date Plaintiff alleges Dr. Garsh was told about Plaintiff's condition.

28  Dr. Garsh saw Plaintiff that same day, at which time Plaintiff discussed his symptoms. The next day,

05CV0283

1   Plaintiff was admitted to the hospital and treated there.  Plaintiff alleges that on May 24, 2004, Dr.

2   Angelici then made false statements indicating that Plaintiff had refused treatment and that his throat

3   was healing well.

4          On June 2, 2004, Plaintiff was again admitted to the hospital and treated.  His pain and

5   numbness were not treated at that time.  On July 15, 2004, Plaintiff saw another dentist, Defendant

6   Torchia.  Plaintiff outlines several complaints about Dr. Torchia's treatment, falsification of records,

7   and refusal to correct the records.  Plaintiff believes that Defendants Torchia and Angelici conspired

8   to protect Angelici.  Plaintiff says Dr. Garsh promised to correct the file, but the corrections were never

9   made.  Plaintiff continued to complain to Defendant Garsh and other medical staff, but was not sent

10  to any surgeon other than Dr. Torchia.  Plaintiff alleges that he continues to suffer physical symptoms

11         Plaintiff alleges that Defendant Ryan, who was the warden of the prison, responded to his

12  administrative appeal concerning Defendant Angelici two months after the alleged misconduct.

13  Defendant Ryan's response to the appeal indicates that he relied on the professional opinion of

14  Defendant Angelici's supervisor, Defendant Garsh, the prison's chief medical officer.  Plaintiff alleges

15  that Defendant Ryan was told of his condition, yet allowed the other Defendants to continue treating

16  him.

17         Plaintiff has complained that the Defendants focused their efforts on treating his throat and

18  mouth injuries, rather than the "serious medical condition of which he complains . . . herein." (FAC

19  at 17.)  As of the filing date, "plaintiff's condition continues to exist; he continues to suffer numbness

20  to the lower left side of his face, and suffers from extreme pain." (*Id.*)  Plaintiff alleges that the cause

21  of his pain and numbness was has not been determined.  He does not say whether these symptoms

22  were partly or completely treatable.  He does state, however, in his objections to the Garsh R&R that

23  he was being treated with pain relievers and anti-inflammatories such as Motrin and Tylenol. (Pl.'s

24  Obj. to Garsh R&R at 5.)

25  **II. Legal Standards**

26         A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the

27  legal sufficiency of the claims in the complaint.  A claim can be dismissed only if it "appears beyond

28  doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to

1   relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See also Hishon v. King & Spaulding*, 467 U.S.

2   69, 73 (1974) (stating that "[a] court may dismiss a complaint only if it is clear that no relief could be

3   granted under any set of facts that could be proved consistent with the allegations"). The court must

4   accept as true all material allegations in the complaint and must construe the complaint in the light

5   most favorable to the plaintiff. *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.

6   1995); *N.L. Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

7          Allegations asserted by *pro se* petitioners, "however inartfully pleaded," are held "to less

8   stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519–20

9   (1972). Thus, where a plaintiff appears *in pro per* in a civil rights case, as here, the court must

10  construe the pleadings liberally and afford plaintiff any benefit of the doubt. *Karim-Panahi v. Los*

11  *Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). The Court, although construing Plaintiff's

12  complaint liberally, will not assume that Plaintiff can prove facts that he has not alleged or that

13  Defendants have violated his rights in ways that have not been alleged. *See Associated Gen.*

14  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

15              The standard used to evaluate a motion to dismiss is a liberal one, particularly when
                the action has been filed pro se. However, a liberal interpretation of a civil rights
16              complaint may not supply essential elements of the claim that were not initially pled.
                Vague and conclusory allegations of official participation in civil rights violations
17              are not sufficient to withstand a motion to dismiss.

18  *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

19          The district court has jurisdiction to review the Magistrate Judge's report and recommendation

20  concerning a dispositive pretrial motion. Fed. R. Civ. P. 72(b). "The district judge to whom the case

21  is assigned shall make a de novo determination upon the record, or after additional evidence, of any

22  portion of the magistrate judge's disposition to which specific written objection has been made in

23  accordance with this rule." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(C). "A judge of the court may accept,

24  reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

25  28 U.S.C. § 636(b)(1)(C). Thus, the district court judge reviews those parts of the report and

26  recommendation to which a party has filed a written objection.

27          The Court has reviewed the FAC, and concludes that the two Eighth Amendment claims are

28  in fact both based on a theory of deliberate indifference to serious medical needs. Therefore, the Court

1  will examine both causes of action together.  The Court adopts those portions of the R&Rs not

2  objected to.

3       The Ninth Circuit has explained the standard for bringing a claim under this theory:

4       A public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment ban against cruel punishment. *Estelle v.*

5       *Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  The inmates must demonstrate that they were confined under conditions posing a risk of

6       "objectively, sufficiently serious" harm and that the officials had a "sufficiently culpable state of mind" in denying the proper medical care. *Wallis v. Baldwin*, 70

7       F.3d 1074, 1076 (9th Cir.1995) (internal quotations omitted). Thus, there is both an objective and a subjective component to an actionable Eighth Amendment

8       violation.

9  *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).  The subjective component is satisfied "only

10  when 'the official knows of and disregards an excessive risk to inmate health or safety; the official

11  must both be aware of the facts from which the inference could be drawn that a substantial risk of

12  serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Farmer v. Brennan*, 511

13  U.S. 825, 837 (1994)).

14       There is no *respondeat superior* liability under § 1983. *Palmer v. Sanderson*, 9 F.3d 1433,

15  1437–38 (9th Cir. 1993).  Causation is a required element of a § 1983 claim. *Estate of Brooks ex*

16  *rel. Brooks v. U.S.*, 197 F.3d 1245, 1248 (9th Cir. 1999).  Thus, to avoid the *respondeat superior*

17  bar, a Plaintiff must allege acts showing a defendant's personal acts connecting him to the

18  Constitutional violation at issue.  *See Sanders v. Kennedy*, 794 F.2d 478 (9th Cir. 1986).

19       Liability under section 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for constitutional violations of his

20       subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.

21

22  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).

23       Plaintiff has alleged an injury that did not heal for a long period, and was accompanied by

both pain and difficulty eating.  His condition therefore bears all three indicia of a serious medical

24

25  needs as set forth by the Ninth Circuit. *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994).

Plaintiff has therefore successfully alleged that he was suffering from a serious medical condition.

26

27  **III.  Request for Judicial Notice**

       "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence

28  outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for

05CV0283

1    summary judgment, and it must give the nonmoving party an opportunity to respond." *U.S. v.*

2    *Ritchie,* 342 F.3d 903, 907–08 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b)).  A court may, however,

3    consider certain materials, including documents attached to the complaint, documents incorporated

4    by reference in the complaint, or — as in this case — matters of judicial notice, without converting

5    the motion to dismiss into a motion for summary judgment. *Id.*

6          In response to Defendant Garsh's unopposed request, Judge Bencivengo took judicial

7    notice of Dr. Angelici's then-current active license status and lack of disciplinary record pursuant

8    to Fed. R. Evid 201(b)(2), and Plaintiff has not objected to this, nor has he suggested in any way

9    this information might be inaccurate.

10         **IV.  Defendant Ryan's Motion to Dismiss**

11          The Ryan R&R recommends dismissing the first two claims against Defendant Ryan.  The

12    Ryan R&R's reasoning is essentially that the only theory of § 1983 liability under which Plaintiff is

13    proceeding is pure *respondeat superior* liability.  The Ryan R&R points out that Plaintiff has made

14    no allegations suggesting that Defendant Ryan, the warden, was in any way involved with

15    Plaintiff's dental or medical care.  Rather,  Ryan is alleged to be liable because he was the warden,

16    and as such he failed to prevent the medical staff from improperly treating Plaintiff.  The FAC does

17    contain allegations that suggest that perhaps Ryan should have known that Plaintiff was not being

18    properly treated, but it contains no allegations suggesting that Ryan was in a position to evaluate

19    whether Plaintiff was receiving proper treatment.

20         Plaintiff's objections to the R&R consist, essentially, of a repetition of the arguments in his

21    complaint.  Most relate to other Defendants and not to Defendant Ryan at all.  Regardless of how

22    the Court resolves these questions, the analysis of Defendant Ryan's liability would be the same.

23    Therefore, the issues raised by these objections are moot and the Court will not examine them.

24    *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) (holding that federal courts lack

25    jurisdiction to consider moot questions or to declare principles or rules of law which cannot affect

26    the matter in issue in the case before them).

27         Two specific objections pertain to Defendant Ryan.  First, Plaintiff objects that "Plaintiff

28    suffered improper dental care by Defendants Angelici, Garsh, Torchia and Defendant Ryan was

1   aware of it." (Pl.'s Obj. to Ryan R&R, at 2.)  Second, Plaintiff objects that he complained about

2   severe pain for a period of three months and, after speaking with Defendant Ryan and others, he

3   was finally transported to a dental office in San Diego on August 16, 2005. (*Id.* at 3.)

4        Plaintiff has not alleged that Defendant Ryan possessed any medical or dental expertise, or

5   knew what the proper treatment was.  He does allege that Ryan was aware of the injuries, but does

6   not allege when Ryan became aware.  He alleges that Ryan "was aware, or should have been aware

7   of several other incidents, whereby the negligence of Angelici, as well as the deformity of his

8   hands had caused injury to other patients, yet Ryan allowed Angelici to continue to treat patients,

9   despite the reasonable for[esee]ability of injury . . . ."  After alleging that Ryan should have been

10  aware of these incidents, Plaintiff goes on to make the contradictory allegation that Ryan was in

11  fact aware that the injuries took place.  In later allegations, Plaintiff alleges that "Ryan and Garsh

12  had full knowledge of said deformation and lik[eli]ness to cause injury." (FAC at 15.) "defendants

13  Ryan and Garsh had full knowledge of Angelici's deformation, as well as the prior complaints of

14  incident[s] regarding Angelici's inability to treat patients safely." (*Id.*)

15       Plaintiff's allegations that Defendant Ryan should have known the danger and could

16  reasonably have foreseen his injury describe negligence, which does not rise to the level of an

17  Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that mere

18  negligence is not a constitutional violation).  Plaintiff's later allegations that Defendant Ryan knew

19  with certainty Dr. Angelici was likely to injure Plaintiff are flawed in two ways.  First, as noted,

20  they contradict earlier allegations and no explanation for the discrepancy is offered.  Second, they

21  are conclusory and unsupported by other factual allegations.

22       There is no allegation that Ryan actually believed any of the prisoner complaints he had

23  heard, or that Defendant Ryan had any reason to believe they were accurate.  Plaintiff has not

24  alleged any basis for showing that Ryan deliberately ignored reliable evidence that Dr. Angelici

25  was unable to treat patients safely.  While Plaintiff alleges that Defendant Ryan had heard

26  prisoners' complaints that Dr. Angelici was not a qualified dentist, he has not alleged that Ryan

27  had reliable information that should have convinced him not to trust the professional judgment of

28  Dr. Garsh and others regarding the adequacy of Dr. Angelici as a dentist..  Because Plaintiff did not

1    allege these facts, the Court will not assume that he can prove them. *Associated Gen. Contractors*
2    *of Cal., Inc.*, 459 U.S. at 526.

3       Courts have held that prison administrators, having no medical expertise themselves, are
4    entitled to rely on health care professionals to assess the needs of prisoners and to provide the
5    proper treatment. *See, e.g., McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977). Plaintiff does
6    not allege that Defendant Ryan had any expertise regarding how to judge whether a particular
7    disability would render a dentist unable to treat patients safely, or what the proper treatment for
8    Plaintiff's condition might be. Plaintiff furthermore does not allege facts that would indicate either
9    that, before Plaintiff's injury, Dr. Angelici was known to be incompetent or else or that Plaintiff
10   was plainly being improperly treated, to the degree that even a layperson such as Ryan would know
11   he should not trust the professional judgment of medical professionals on the prison staff.

12      Plaintiff's second objection pertains to continuing severe pain and the failure of Defendant
13   Ryan to see that he was sent to a dental office in San Diego. Plaintiff's pleadings and motions
14   make clear, however, that he was receiving ongoing treatment from several doctors and dentists in
15   the prison. Plaintiff's objection therefore appears to be that Ryan should have known that the only
16   way of effectively treating Plaintiff's injuries was to send him outside the prison for treatment.
17   Even if Ryan should have known that this was the proper course of treatment, however, there is no
18   allegation that he did know it and deliberately ignored it. An Eighth Amendment claim for
19   deliberate indifference to serious medical needs includes this subjective element, which Plaintiff
20   has not alleged. The Court may not supply essential elements of the claim that were not initially
21   pled. *Ivey*, 673 F.2d at 268.

22      For these reasons, Plaintiff's objections to the Ryan R&R are **OVERRULED**.

23    **V. Defendant Garsh's Motion to Dismiss**

24      The Garsh R&R recommended that Dr. Garsh's actions did not rise to the level of
25   deliberate indifference, pointing out that Dr. Garsh began providing Plaintiff with continuing
26   treatment as soon as he was told about Plaintiff's condition. The Garsh R&R also recommended
27   that allegations of conspiracy between Dr. Torchia and Dr. Angelici was too conclusory and
28   therefore insufficient to support an allegation that the two of them conspired to falsify entries in

05CV0283

1  Plaintiff's medical records.

2    Plaintiff agrees with the Garsh R&R's conclusion that, starting the same day Defendant

3  Garsh was first told about Plaintiff's condition, he began providing Plaintiff with ongoing

4  treatment. (Pl.'s Obj. to Garsh R&R at 2–3.) Plaintiff objects that Dr. Garsh delayed scheduling

5  him to see an oral surgeon, and that Dr. Garsh's treatment was ineffective. (*Id.* at 4–5.) Plaintiff

6  has conceded that Defendant Garsh provided treatment himself, and also relied on Dr. Torchia to

7  provide treatment, and that Defendant Garsh in fact oversaw a long series of interventions.

8  Plaintiff has alleged, however, that Dr. Torchia had a "conflict of interest" and was biased against

9  him, and therefore was an unsuitable choice. Plaintiff objects that his continuing pain was not

10  effectively managed and that he was provided only with Motrin and Tylenol which, he contends,

11  amounts to no treatment. (*Id.* at 5–6.) He also objects that he had to bring complaints before being

12  given medical treatment, and that some of the medical treatment he received was provided only

13  because he complained. (*Id.* at His objection to this recommendation of the Garsh R&R is that

14  essentially Dr. Garsh's treatment was inadequate and improper.

15    None of Plaintiff's objections point out that Defendant Garsh violated Plaintiff's

16  Constitutional rights. In large part, Plaintiff's objections and the allegations they relate to point out

17  that Plaintiff disagrees that the treatment he received, and that he found it to be improper and

18  inadequate. Disagreement with the judgment of a medical professional cannot, by itself, form the

19  basis for an Eighth Amendment claim under § 1983. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th

20  Cir.1996) (concluding that difference of opinion between physicians or between inmate and

21  physician regarding treatment does not amount to deliberate indifference).

22    Plaintiff also attempts to raise a new argument that although Defendant Garsh did provide

23  him with treatment, Garsh did so with bad motives rather than because it was the right thing to do.

24  (Pl.'s Obj. to Garsh R&R at 3.) ("Defendant Garsh did not provide medical treatment to Plaintiff

25  because it was 'the right thing to do,' he was left with no other choice . . . . Defendant Garsh did

26  not schedule[] Plaintiff [to see an oral surgeon] because it was 'the ethical thing to do.'")

27  Plaintiff's new allegations of bad motives do not rise to an Eighth Amendment violation because

28  Plaintiff concedes that Defendant Garsh did provide him with medical treatment. Defendant

1   Garsh's motives in doing so are irrelevant.

2        As part of his objections to the Garsh R&R, Plaintiff relies on allegations in the FAC that

3   Dr. Torchia had a "clear conflict of interest" based on allegations that Plaintiff had accused Dr.

4   Torchia of falsification of his consultation report and allegations of conspiracy between Drs.

5   Torchia and Angelici to cover up Dr. Angelici's errors.  Plaintiff alleges that Defendant Garsh

6   should not have permitted Dr. Torchia to continue to treat him because of this.  Plaintiff has not,

7   however, alleged facts sufficient to show that Dr. Garsh entered into this alleged conspiracy, or that

8   he knew Dr. Torchia would fail to treat Plaintiff properly.

9        This argument points up two significant gaps in Plaintiff's allegations.  As discussed

10  below, his allegations of conspiracy are legally insufficient.  Secondly, a number of Plaintiff's

11  arguments rely on the unstated assumption that if he or other prisoners told Defendant Garsh

12  something, then Garsh must have known it was true and must have known that anything he was

13  told to the contrary was false.  Without further factual allegations (which are not supplied), such an

14  assumption is unwarranted.  Therefore, where Defendant Garsh's knowledge of a fact is a required

15  element of a claim, Plaintiff's bare allegations that he told Dr. Garsh that fact are insufficient to

16  support the required element.

17       Plaintiff has not alleged facts sufficient to support his assertion that Dr. Garsh conspired

18  with Dr. Angelici or Dr. Torchia, or that he knew the entries in Plaintiff's records to be false.

19  Section 1983 claims that defendants conspired to deprive a plaintiff of constitutional rights are

20  subject to a heightened pleading standard.  "To recover under a conspiracy theory, plaintiff's

21  complaint must contain specific factual allegations to support a theory of conspiracy." *Buckley v.*

22  *Gomez*, 36 F. Supp. 2d 1216, 1221 (S.D.Cal. 1997).  Plaintiff's allegations regarding the Defendant

23  Garsh are not sufficiently specific, and therefore do not meet the pleading standard.

24       Plaintiff merely alleges is that he told Dr. Garsh the records were falsified.  There is no

25  allegation showing that Dr. Garsh knew that they were inaccurate.  As discussed above, Dr. Garsh

26  was entitled to rely on the judgment of medical professionals.  Furthermore, Plaintiff does not

27  connect alleged inaccuracies in his record with any Constitutional violations.  His chief complaint

28  is that the alleged falsification of the record the records was part of a cover-up intended to conceal

1   Dr. Angelici's wrongdoing. (FAC at 15.) If Plaintiff's records were inaccurate and remained

2   uncorrected, it would indicate poor recordkeeping, but would not in itself constitute denial of care

3   for a serious medical condition. Erroneous medical records obviously have the potential to mislead

4   medical personnel who do not know they are inaccurate, and as a result to cause medical errors.

5    However, Plaintiff does not specifically allege that they did so in this case. In fact, all the medical

6   personnel he accuses of failing to treat him also allegedly knew or had been told that the records

7   were inaccurate. Plaintiff has therefore not pled facts sufficient to establish the required element of

8   causation. *Estate of Brooks*, 197 F.3d 1245, 1248 (9th Cir. 1999).

9       Plaintiff objects that Defendant Garsh refused to order his subordinates to file incident

10  reports as required by state regulations and failed to include certain details in reports he did file,

11  acts which Plaintiff repeatedly describes as "negligent."[1] (Pl.'s Obj. to Garsh R&R at 7–8.)

12  Plaintiff repeatedly describes these acts as negligent. (*Id.* at 7–8.) Citing Judge Swygert's dissent

13  in *Benson v. Cady*, 761 F.2d 335, 345 (7th Cir. 1985), Plaintiff raises the argument that a repeated

14  series of negligent acts can constitute deliberate indifference. There, Judge Swygert cited

15  *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983) for the principle that deliberate

16  indifference can be evidenced by repeated examples of negligent acts which disclose a pattern of

17  conduct by a prison's medical staff. In *Wellman*, however, the negligent acts were described as

18  ongoing systemic failures that inevitably led to unnecessary suffering. 715 F.2d at 272. In *Benson*,

19  Judge Swygert's dissent described a series of gross failures including repeated failures to provide

20  prescribed treatments. 761 F.2d at 344. Failing to prepare individual incident reports or to include

21  certain details in medical reports does not rise to this level. Plaintiff does not allege he was denied

22  needed medical care as a result of the alleged failures to prepare and file incident reports, nor is it

23  clear that he even has standing to raise claims for these alleged violations of state regulations.

24      Plaintiff raises other complaints about his treatment, although he does not connect Dr.

25  Garsh with them, and some clearly occurred before Dr. Garsh was involved. Plaintiff's objections

26

27      [1] On the basis of Plaintiff's description, it is apparent that this is not merely an error in
    terminology. Plaintiff outlines allegations that Defendant Garsh failed to keep accurate records and
28  provide them when needed for consultation in a manner suggesting that Garsh was merely failing to
    carry out his responsibilities diligently.

- 11 -                                              05CV0283

1   further mention new allegations of wrongdoing not alleged in the FAC.

2          Therefore, Plaintiff's first and second causes of action against Defendant Garsh will be

3   **DISMISSED**.

4          **VI. Conclusion and Order**

5          For these reasons, the Court **ADOPTS** both the Ryan R&R and the Garsh R&R.  Plaintiff's

6   first and second causes of action against Defendants Ryan and Garsh are hereby **DISMISSED**

7   **WITHOUT PREJUDICE**.   Although Plaintiff was formerly appearing *pro se*, he is now

8   represented by counsel who, the Court understands, will be able to assist him with drafting and

9   filing any further amended complaints.  If Plaintiff wishes to file a second amended complaint, he

10  may do so no later than the close of business on **October 2, 2006.**

11

12

13         **IT IS SO ORDERED**.

14  DATED: _____9-1-06_____

15                                                          _____

16                                                          **HONORABLE LARRY ALAN BURNS**
                                                            United States District Judge

17  cc:     Magistrate Judge Cathy Ann Bencivengo
            Plaintiff, *Pro Se*
18          All Counsel of Record

19

20

21

22

23

24

25

26

27

28

05CV0283